Robert W. Ottinger
THE OTTINGER FIRM, P.C.
79 Madison Avenue
New York, 10016
robert@ottingerlaw.com
Tel: 917-566-2037
Fax: 212-571-0505

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW AUSTIN,<br><br>Plaintiff,<br><br>vs.<br><br>TD SECURITIES (USA) LLC,<br><br>Defendant. | **Civil Action No.:** 1:25-cv-7866<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Matthew Austin, by and through his attorneys, The Ottinger Firm, P.C., complaining of TD Securities (USA) LLC ("TD"), alleges as follows:

## I. INTRODUCTION

1. Plaintiff Matthew Austin brings this action against his former employer, TD, for declaratory relief and breach of contract arising out of and relating to Defendant's unlawful attempt to enforce an overbroad and unenforceable non-compete agreement as well as Defendant's breach of promises and obligations concerning Plaintiff's role and contributions.

2. Plaintiff seeks a declaration that the restrictive covenant is unenforceable, an award for breach of contract and related harm, and any further relief this Court deems just and proper.

## II. THE PARTIES

3. Plaintiff Matthew Austin ("Plaintiff" or "Mr. Austin") is an individual residing in Florida. He was employed by Defendant TD Securities (USA) LLC ("TD" or "Defendant") from February 20, 2024, until his resignation on August 25, 2025. At the time of his resignation, Mr. Austin was a Director – Credit Trader/Researcher at TD.

4. Defendant is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York. TD conducts substantial business in the State of New York and is an employer within the meaning of the applicable state labor laws.

## III. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as Plaintiff is a citizen of the State of Florida and Defendant is a citizen of the State of New York, and the amount in controversy exceeds $75,000.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

7. This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, Federal Rule of Civil Procedure 57, and the general legal and equitable powers of the Court.

## IV. FACTS COMMON TO ALL CAUSES OF ACTION

8. Plaintiff began his employment with Defendant on or about February 20, 2024.

9. As a condition of employment, Plaintiff was required to sign a Non-Compete, Non-Solicitation, and Intellectual Property Agreement (the "Agreement" or the "Non-Compete").

10. The Agreement purports to prohibit Plaintiff from engaging directly or indirectly "in any Competitive Activity with any Competitive Business." The Agreement defines "Competitive Activity" as

> directly or indirectly (a) becoming an employee, advisor, or consultant in a capacity that is identical or similar to the capacity I was in, or providing services or having responsibilities that are identical or similar to the services I provided, during my employment with the Company; (b) becoming a partner or principal of a Competitive Business . . .; or (c) forming or acquiring greater than five percent (5%) equity, voting, revenue, income, profit, loss or other economic interest in a Competitive Business

and "Competitive Business" as "any business that engages in, or owns or controls a significant interest in any entity that engages in, any of the business activities identical or similar to any of those engaged in by the Company."

11. Furthermore, the Non-Compete seeks to restrict Plaintiff from engaging directly or indirectly in any Competitive Activity with any Competitive Business, without any geographic limitation, for a period of twelve (12) months after the end of employment with Defendant.

12. The restrictions contained in the Non-Compete are overly broad in geographic scope, duration, and subject matter, and are not reasonably necessary to protect any legitimate business interest of Defendant.

13. Plaintiff was recruited by Defendant through standard recruitment practices under explicit promises that he would be permitted to implement and manage a systematic trading strategy built around algorithms, models, and alpha signals ("the strategy"), with execution primarily through the sales and trading desk ("voice desk").

14. The principles behind the strategy are widely known and used interchangeably across banks and hedge funds, including TD, and is readily available in academic literature and industry publications.

15. Plaintiff knew of and utilized the strategy prior to joining TD.

16. Plaintiff joined TD with the understanding that he would gain more technical support and direct oversight of TD's existing trading strategy, along with more capital for trading.

17. Text communications between Plaintiff and TD employees show that members of the voice desk believed that Plaintiff would play a substantial role in their trading activity through use of

the strategy.

18. Plaintiff was not informed until after joining TD that the voice desk was a separate broker-dealer entity, preventing him from directing execution of the strategy.

19. On or about November 5, 2024, Plaintiff met with the then-head voice trader to finalize the logistics of how the strategy would be run.

20. On or about April 1, 2025, approximately one week after the strategy was launched, over half of the sales and trading team, including the head voice trader, were terminated.

21. To the best of Plaintiff's knowledge, all voice traders and sales team members, including those on the systematic trading team, who were terminated either were released from their non-compete agreements entirely or were subjected to vastly shorter non-compete periods than Plaintiff's.

22. Following those terminations, the remaining voice desk members refused to execute the strategy, citing a lack of interest, time, and resources.

23. Text communications and company messages to Plaintiff from TD employees indicate that Plaintiff's colleague on the technology team and two other researchers were directly told by Matthew Millus, the current head of the voice desk, that he would "prefer not to run [Plaintiff's] strategy" as "he knew where the market was headed," and that the other members of the voice desk were "not bought in."

24. When Plaintiff raised concerns with management and senior executives regarding execution of the strategy, he was told he could not disrupt how the sales team conducted business.

25. Plaintiff proposed several solutions regarding how the sales team could be utilized to achieve the strategy's goals, but Defendant rejected Plaintiff's ideas.

26. On or about July 1, 2025, the strategy was shut down, effectively denying Plaintiff the ability to execute his mandate. Defendant continued to use alpha signals daily without Plaintiff's input or oversight in an unrelated strategy.

27. Defendant further refused to provide a clear formula for compensation, instead telling Plaintiff to "trust" management.

28. On August 21, 2025, Plaintiff discussed resignation with management due to his inability to run the strategy and the current role not aligning with his expectations set forth prior to joining TD.

29. Plaintiff's manager, Martin Mannion ("Mr. Mannion"), acknowledged that they "set [Plaintiff] up for failure" and expressed his interest, verbally and via text message, in keeping Plaintiff employed at TD.

30. On August 22, 2025, Matthew Schrager ("Mr. Schrager"), also one of Plaintiff's managers, spoke with Mr. Mannion over the phone regarding Plaintiff's planned resignation while Mr. Schrager was on a mandatory, two-week leave pursuant to FINRA requirements.

31. That same day, on August 22, 2025, in a subsequent conversation between Mr. Mannion and Plaintiff, the tone shifted dramatically when Mr. Mannion indicated that Plaintiff's employment was a "take it or leave it" situation, as no counter offers or proposals were made to address Plaintiff's reasons for leaving.

32. On August 25, 2025, Plaintiff's official resignation date, Mr. Schrager denied Plaintiff's request for a supervisory role citing that he could not justify to management giving Plaintiff his own strategy team because Plaintiff "has not given them a good reason," indicating that Plaintiff was neither unique nor exceptional.

33. Plaintiff attempted to negotiate the terms of his departure by attributing it to a misalignment in expectations so that both parties could part ways amicably.

34. Plaintiff's reasonable request was denied by Defendant.

35. Plaintiff ultimately resigned on August 25, 2025, due to Defendant's actions.

36. Defendant now seeks to enforce the overbroad and unenforceable Non-Compete against Plaintiff, restraining him from pursuing his livelihood in the financial industry.

37. An actual and justiciable controversy exists regarding the enforceability of the Non-Compete and Plaintiff's right to work in his chosen profession.

38. Plaintiff has suffered damages including lost income, deferred compensation, health coverage costs, and reputational harm.

39. Each day that Plaintiff remains unemployed, his skill set deteriorates due to the fast-paced, evolving nature of the field of quantitative finance.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
***Declaratory Relief (28 U.S.C. § 2201-2202)***

40. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

41. An actual controversy dispute exists as to the parties' rights and obligations under the Non-Compete.

42. Under New York law, restrictive covenants are disfavored and enforceable only when they are reasonable in scope and necessary to protect legitimate business interests. Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999); BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 389 (1999); Reed, Roberts Assocs., Inc. v. Strauman, 40 N.Y.2d 303, 307 (1976).

43. The Non-Compete serves no legitimate business interest, is overbroad, and imposes undue hardship on Plaintiff by preventing him from working in his chosen field.

44. Plaintiff seeks a declaration from this Court that Non-Compete is unenforceable, void, or otherwise inapplicable to Plaintiff.

### SECOND CAUSE OF ACTION
***Breach of Contract***

45. Plaintiff re-alleges and incorporates all preceding paragraphs by reference as if fully set forth herein.

46. Defendant induced Plaintiff to join under promises that he would manage a systemic trading strategy.

47. Defendant failed to honor these promises, constituting a material breach of contract.

48. Plaintiff has suffered damages including lost compensation, benefits, and career opportunities.

49. By reason of the foregoing, Plaintiff has become entitled to an award of compensatory damages in an amount to be determined by a jury at trial, together with costs and disbursements, attorneys' fees, and appropriate interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment against Defendant as follows:

A. A declaration that the Non-Compete is unenforceable, void, or otherwise inapplicable to Plaintiff;

B. An award for actual and compensatory damages in an amount to be proven at trial;

C. Pre-judgment and post-judgment interest, as provided by law;

D. Attorneys' fees and costs under applicable law, including expert fees and costs; and

E. Such additional and further relief as this forum may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and claims with respect to which they have a right to jury trial.

Dated: September 22, 2025
New York, New York

Respectfully submitted,

**THE OTTINGER FIRM, P.C.**

Robert W. Ottinger
79 Madison Avenue
New York, NY 10016
robert@ottingerlaw.com
Tel: 917-566-2037
*ATTORNEY FOR PLAINTIFF*